# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.B.-1 and L.B.**

**No. 19-0769** (Braxton County 18-JA-4 and 18-JA-5)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.B.-2, by counsel Clinton R. Bischoff, appeals the Circuit Court of Braxton County's July 26, 2019, order terminating his parental and custodial rights to R.B.-1 and L.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood he could substantially correct the conditions of abuse and neglect and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2018, the DHHR filed an abuse and neglect petition that alleged the children's mother and her boyfriend engaged in domestic violence and abused drugs in the children's presence. As to petitioner, the petition alleged that he abandoned the children and neglected them by failing to provide for their needs, including a failure to pay child support. According to the petition, the children "reported that they had no memory of" petitioner.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as R.B.-1 and R.B.-2, respectively, throughout this memorandum decision.

1

In May of 2018, the circuit court held an adjudicatory hearing, during which it was established that petitioner was almost $6,000 in arrears on his child support obligations and had not paid child support since October of 2015. Additionally, a DHHR employee testified that petitioner had not visited the children for approximately one year. Petitioner testified and admitted that he did not pay his child support, but asserted that his nonpayment was the result of his prior incarceration. Additionally, petitioner claimed that he provided the mother $100 per month. At the conclusion of the hearing, the circuit court found that the DHHR failed to satisfy its burden of proof in regard to the allegations against petitioner, given that he was unable to pay child support due to his incarceration. The circuit court ordered, however, that petitioner remain a party to the proceedings. Thereafter, the children's guardian filed a report that indicated that petitioner did "not want to have placement or custody of" the children, although he did desire visitation. As such, the guardian recommended "supervised visitation with [petitioner] until the children are comfortable spending time with him."

In July of 2018, petitioner filed a motion for the children to be placed in his custody. The circuit court held a hearing on the motion and ordered the children's guardian to review certain records before making a determination, due to petitioner's history of domestic violence and the fact that he was awarded limited contact with the children in a prior divorce proceeding. In August of 2018, the circuit court held a second hearing on the children's placement with petitioner, during which the children's mother asserted that petitioner was "a very violent[-]natured individual" and had not had contact with the children since March of 2017. The guardian further asserted that petitioner "has a history of domestic violence." Ultimately, the circuit court found that placement in petitioner's care was contrary to the children's best interests because he had never been their primary custodian and the relationship needed to be fostered before the children could be placed in petitioner's care. As such, the circuit court increased petitioner's supervised visitation with the children.

In October of 2018, the circuit court was informed that petitioner tested positive for marijuana and methamphetamine pursuant to a drug screen administered by petitioner's parole officer. As such, petitioner's visits with his children were suspended. Petitioner's visits were later reinstated, but then suspended again after petitioner tested positive for marijuana in November of 2018. It was later explained that petitioner signed multiple voluntary admission forms admitting that he would test positive for marijuana, methamphetamine, or both between June of 2018 and October of 2018, in addition to his positive screen for marijuana in November of 2018. Additionally, there were several instances during this period where petitioner failed to report for drug screens. The DHHR filed a motion to terminate petitioner's visitation and, during a hearing on the motion, petitioner admitted to drug abuse and parole violations, and the circuit court ordered that his visitation be reinstated only if he tested negative on drug screens three times per week for three weeks.

In December of 2018, the DHHR filed an amended petition alleging petitioner's drug use and various parole violations as conditions that constituted abuse and/or neglect. The following month, the circuit court held an adjudicatory hearing on the amended petition that petitioner failed to attend, although he was represented by counsel. The record reflects that petitioner's counsel was unsure of petitioner's whereabouts at that time. The DHHR presented evidence of petitioner's past

failed drug screens, in addition to testimony that he refused to submit to a drug screen in December of 2018 and tested positive for marijuana later in December of 2018. As such, the circuit court adjudicated petitioner in regard to his drug use and its impact on his ability to properly parent the children. Petitioner thereafter moved for an improvement period.

In June of 2019, the circuit court held a dispositional hearing, during which it was informed that petitioner was arrested in May of 2019 for domestic battery against his mother, adult daughter, and girlfriend; strangulation against his adult daughter; and illegal possession of a firearm. As a result of these pending charges, petitioner was incarcerated. Petitioner denied the charges and argued in support of his motion for an improvement period. He further confirmed that he was still approximately $5,000 in arrears on his child support obligation. The DHHR presented additional evidence of petitioner's failure to comply with services, including testimony regarding several occasions where petitioner refused to submit to a drug screen prior to visits with the children, which resulted in the visits being cancelled. Ultimately, the circuit court found that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental and custodial rights was necessary for the children's welfare. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated his parental and custodial rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in terminating his parental rights because the issues of abuse and neglect were correctable. According to petitioner, the circuit court should have granted him an improvement period instead of proceeding to termination. Upon our review, however, we find that petitioner is entitled to no relief, especially in light of the fact that petitioner's argument on appeal misstates the authority governing the granting of improvement periods and mischaracterizes the circuit court's findings in support of termination.

---

[2]The mother's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in the current foster home.

3

On appeal, petitioner asserts that West Virginia Code § 49-4-610(2) "requires that a post-adjudicatory improvement period be granted to an adult respondent if that respondent demonstrates . . . that the respondent is likely to fully participate in the improvement period." We note, however, that petitioner's position is not an accurate representation of the specific language of that statute and it further ignores this Court's numerous holdings regarding the discretion afforded circuit courts in the granting of improvement periods. While it is true that a parent must establish that he or she is likely to fully comply with the terms of an improvement period in order to be eligible for one, this Court has repeatedly held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). More importantly, this Court has directed as follows:

> Compliance with the statutory requirements contained in West Virginia Code § 49-4-610 (2015) does not unconditionally entitle a parent to an improvement period. Only where such an improvement period does not jeopardize a child's best interests should one be granted and the circuit court's order granting an improvement period should set forth findings demonstrating the lack of prejudice or harm to the child.

Syl. Pt. 3, *State ex rel. W. Va. Dep't of Health and Human Res. v. Dyer*, -- W. Va. --, 836 S.E.2d 472 (2019). As such, it is clear that petitioner's argument is fundamentally flawed in that he believes he was unconditionally entitled to an improvement period had he established that he was likely to fully comply with the terms thereof. More importantly, however, is the fact that the record demonstrates that petitioner could not satisfy his burden in this regard. While petitioner cites to various statements regarding his willingness to participate in an improvement period, the record shows that petitioner's failure to comply during the majority of the proceedings constituted substantial evidence that he would not comply with the terms of an improvement period. Accordingly, we find no error in the circuit court's denial of his motion for a post-adjudicatory improvement period.

Further, petitioner's noncompliance throughout the proceedings supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As set forth above, petitioner admitted to his repeated abuse of marijuana and methamphetamine, which resulted in the termination of his visits with the children. Due to petitioner's continued substance abuse, the circuit court required petitioner to provide negative screens three times per week for three weeks before visitation with the children could resume. Petitioner failed to comply with the circuit court's directive, which was one factor that resulted in his lack of contact with the children from "the fall of 2018" through disposition. Additionally, the record shows that petitioner, at times, expressly refused to submit to drug screens prior to visits, which resulted in the cancellation of those visits.

"We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Here, petitioner's failure to comply with services not only prevented him from visiting his children, it also prevented him from fostering the bond necessary to eventually obtain custody of them, given that his extended absence from their lives resulted in the children having no memory of him prior to the proceedings. On appeal, petitioner repeatedly asserts that he shared a bond with the children both before and after the petition's filing. This assertion, however, is not supported by the record. As set forth in the DHHR's petition, the children "had no memory" of petitioner prior to the petition's filing. Additionally, a DHHR employee testified that petitioner did not have a bond with the children based on her discussions with the children approximately one month prior to the dispositional hearing.

Further, petitioner attempts to minimize the overwhelming evidence that supported this finding and cites to other factors that he believes evidenced his willingness to correct the conditions that led to the petition's filing, such as his employment prior to incarceration, his stated willingness to "have a chance" at correcting the conditions giving rise to the petition, his previous participation in visitation with the children, and a series of negative drug screens. This evidence, however, is not compelling when considered against petitioner's extended noncompliance below. Further, petitioner cites his incarceration as the main factor that prevented him from participating in services to remedy the circumstances giving rise to the petition. However, petitioner was not incarcerated until May of 2019, approximately one month prior to the dispositional hearing, and the overwhelming evidence establishes that petitioner's noncompliance began much earlier. As such, we find no error in the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future.

Finally, we find no error in the termination of petitioner's parental rights. As set forth above, there was overwhelming evidence that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. Additionally, the record shows that, because of their need for permanency and stability, the children's welfare required termination of petitioner's parental and custodial rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental and custodial rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia

5

Code § 49-4-604,] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). It is clear that the circuit court did not err in terminating petitioner's parental rights.

On appeal, petitioner takes issue with the circuit court's consideration of his incarceration at the time of the dispositional hearing and argues that the charges against him were dismissed two months after the dispositional hearing. Without belaboring the specifics of petitioner's argument, we note that petitioner is entitled to no relief. Importantly, dismissal of the charges against him after the dispositional hearing is irrelevant given that this information could not have been considered in reaching a decision at disposition. More importantly, this Court's prior holdings regarding consideration of incarceration as the sole factor in regard to a parent's ability to remedy the conditions of abuse and neglect to which petitioner cites are not applicable under the facts of this case. As this Court has directed,

> [w]hen *no factors and circumstances other than incarceration* are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it.

*Cecil T.*, 228 W. Va. 89, 91, 717 S.E.2d 873, 875, syl. pt. 3, in part (emphasis added). As addressed above, the circuit court considered a number of factors other than petitioner's incarceration in determining that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Because incarceration was not the sole basis upon which this finding was made, it is unnecessary to analyze this Court's prior directives about the consideration of additional factors surrounding petitioner's incarceration.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 26, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

6

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison